UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

XSTRATA CANADA CORPORATION
f/k/a FALCONBRIDGE LIMITED, an Ontario,
Canada corporation,
                    Plaintiff,

    -against-                                               1:08-CV-1366 (LEK/DRH)

ADVANCED RECYCLING
TECHNOLOGY, INC., a New York
corporation,
                    Defendant.

## MEMORANDUM-DECISION AND ORDER

Plaintiff filed the instant Complaint on December 23, 2008, asserting claims for breach of contract, or in the alternative for unjust enrichment. See generally Compl. (Dkt. No. 1). Presently before the Court is Plaintiff's Motion to dismiss Defendant's counterclaims, filed on March 18, 2009, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Mot. (Dkt. No. 6). For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.

**I.    BACKGROUND**

On November 7, 2006, Plaintiff Xstrata Canada Corporation, f/k/a Falconbridge Limited ("Xstrata"), and Defendant Advanced Recycling Technology, Inc. ("ART") entered into an agreement ("Agreement") wherein Xstrata agreed to purchase a quantity of fire assay slag ("slag") from ART. Compl. ¶ 6 and Ex. A. at 1; see Answer ¶ 4 (Dkt. No. 4). Xstrata and ART mutually agreed that the slag was to contain certain quantities of gold, silver, copper, and other minor metals. Compl. ¶ 6 and Ex. A. at 1. The Agreement stipulated that gold and silver prices were to be

determined by specified London quotations.  Compl. Ex. A at 2.  The Agreement also indemnified Xstrata against any potential liability.  Id. at 6.

Pursuant to the Agreement, Xstrata was obligated to make a provisional 80% payment to ART, within fifteen days of slag shipment receipt, based upon the expected quantities of gold and silver to be contained in the slag.  Id. at 2.  The provisional payment amount was to be determined by preliminary assay analyses.  Id. at 1-2.  Final payment on any given slag shipment was to be ascertained by verifying the actual amount of precious metals contained in the slag shipment, as reflected by the assay sample analyses performed by Xstrata and ART.  Id.

ART sent Xstrata a provisional invoice after each of the three slag shipments, and Xstrata paid each provisional invoice within three to six weeks.  Compl. ¶¶ 12-14.  Following payment of the invoices, Xstrata alleged that the shipments of slag contained less recoverable gold and silver than the initial assay analyses had represented.  Id. ¶ 15.  Xstrata calculated the amount of recoverable gold contained in the slag to be worth less than the three provisional payments it had made to ART.  Id. ¶ 19.  Xstrata refused to make further payments and alleged that ART had refused to pay for the treatment charges that it was obligated to make pursuant to the Agreement. Id.  ART claims that Xstrata owes a remaining balance of $456,700.35.  Answer ¶ 20.

Xstrata filed the instant Complaint on December 23, 2008.  Dkt. No. 1.  ART filed its Answer on February 26, 2009, alleging that its assay analysis demonstrates that the slag contained more gold and silver than Xstrata had alleged.  Answer ¶ 20.  ART counterclaims an alleged breach of contract against Xstrata, seeking damages in the amount of $456,700.35, based on Xstrata's refusal to pay ART the allegedly remaining balance.  Id.  In the alternative, ART counterclaims that Xstrata has been unjustly enriched by receiving slag that contained gold and silver, for which

Xstrata allegedly has not paid. Id. ¶¶ 24-25.

## II. DISCUSSION

### A. Standard of Review

"To survive a motion to dismiss, a [pleading] must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, - - - U.S. - - - - , 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" sufficiently constitute a claim. Iqbal, 129 S. Ct at 1949 (citing Twombly, 550 U.S. at 555). When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party in its pleading as true and "draw all inferences in the light most favorable" to the non-moving party. In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007).

Pursuant to Iqbal and Twombly, a party must plead with such factual detail so as to sufficiently "'nudge[] [its] claims . . . across the line from conceivable to plausible.'" Iqbal, 129 S. Ct. at 1950-51 (quoting Twombly, 550 U.S. at 570). While a claim does not require the recitation of detailed factual allegations, it does require enough facts to state a claim to relief that is plausible *prima facie*. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555). While there is no "probability requirement" to fulfill this standard, a claim must demonstrate "more than a sheer possibility" that a non-moving party has acted unlawfully. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

### B. Breach of Contract Counterclaim

"Although the standards for dismissing the [counterclaims] are federal standards, the federal

3

district court judge must stand in the shoes of a state court judge when ruling on [] contract issues in a diversity case . . . ."[1] Lipsky v. Commonwealth United Corp., 551 F.2d 887, 895 (2d Cir. 1976) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).  Under New York law, a party must prove the following elements in order to establish a valid claim for breach of contract: (i) the existence of a binding, enforceable contract; (ii) breach of contract by the other party; and (iii) damages suffered as a consequence of a party's breach.  Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr., 180 F. Supp. 2d 387, 389-390 (N.D.N.Y. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 245-246 (2d Cir. 2000)).  In pleading a breach of contract claim, a party "'must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.'"  Dagen v. Marriott Intern., Inc., No. 1:05-CV-1593, 2006 WL 3728344, at *3 (N.D.N.Y. December 18, 2006) (Kahn, J.) (quoting Americorp. Fin., Inc., 180 F. Supp. 2d at 390).

In its first counterclaim, ART pleads that it is entitled to damages as a result of Xstrata's breach of contract.  Answer ¶ 20.  ART affirms Xstrata's contention that both had entered into a binding, enforceable contract.  Id. ¶ 4.  However, ART argues that the quality of the slag in question exceeds the value of Xstrata's three provisional payments and that Xstrata has therefore breached the Agreement by refusing to pay the remaining balance due ART.  Id. ¶ 20.  ART further alleges that there are multiple assay analyses that support its contention as to the value of the slag shipments, but Xstrata disputes the veracity of ART's "supporting records."  Id. ¶¶ 18, 20; Pl.'s

---

[1] The Court takes note of the choice of law clause in the Agreement (Compl. Ex. A at 7) which stipulates that the terms of the Agreement shall be construed in accordance with the laws of England.  However, both parties' pleadings rely exclusively on United States federal and state law.  Therefore, for purposes of the pending Motion, the Court will apply New York law.

Mem. in Supp. at 4-5 (Dkt. No. 7).  ART also contends that it sustained damages in the amount of $456,700.35 after Xstrata allegedly breached the Agreement by failing to compensate ART for materials received.  Answer ¶¶ 21-22.

Xstrata moves to dismiss ART's counterclaim on the grounds that the evidence proffered by ART is "a virtually unidentified, extracontractual source" that solely consists of a "single vague reference to plaintiff's own records."  Pl.'s Mem. in Supp. at 4-5.  Xstrata contends that ART's failure to plead, with particularity, as to ART's "key supporting records" is sufficient grounds to dismiss ART's counterclaim.  Id. at 4.  Xstrata argues that ART's use of "vague, . . . extrinsic evidence" to support the basis of its pleading should preclude ART from successfully entering its breach of contract counterclaim.  Id. at 5.  Xstrata further asserts that ART's failure "to plead anything affirmative about its own test results or . . . how such information . . . support[s] its breach of contract [counter]claim" precludes ART from successfully pleading a breach of contract counterclaim.  Pl.'s Mem. in Supp. at 4-5.  ART counters that it has pleaded to the extent that it is required to establish its breach of contract counterclaim to be factually plausible and not merely conclusory.  Def.'s Mem. in Opp'n at 2 (Dkt. No. 22); Iqbal, 129 S. Ct. at 1949.

At this stage in the proceeding, a party need only plead, with sufficient factual detail, to the extent that it must sufficiently articulate a plausible claim upon which relief may be granted.  Iqbal, 129 S. Ct. at 1949; see also FED. R. CIV. P. 8.  As ART's counterclaims neither assert fraud nor mistake on the part of Xstrata, ART is not required to state the entirety of circumstances surrounding its counterclaims with specific factual detail.  See FED. R.CIV. P. 9(b).  ART's factual pleading is sufficient to demonstrate a right to relief beyond the "speculative level."  Its pleading satisfies the three-prong test under Americorp Financial, Inc., wherein ART: (I) demonstrates the

existence of a binding, enforceable contract between itself and Xstrata; (ii) alleges that Xstrata failed to pay the allegedly remaining balance due ART, thereby breaching the contract; and (iii) alleges an amount of damages that it has sustained as a result of Xstrata's alleged breach. Answer ¶¶ 4, 21-22. Accordingly, ART's breach of contract counterclaim meets the minimal pleading standards required by the Federal Rules. See Iqbal, 129 S. Ct. at 1949; FED. R. CIV. P. 8(a)(2).

ART further contends in its memorandum in opposition to Plaintiff's Motion that the contractual instrument is ambiguous because it does not "provide a mechanism for resolving disputes concerning . . . [errors in] sampling . . . the material." Def.'s Mem. in Opp'n at 9. Xstrata claims that ART's failure to "allege any such sampling dispute in its [A]nswer and [C]ounterclaim" is dispositive of ART's capacity to assert this argument. Pl.'s Reply at 3 (Dkt. No. 25). However, a claim may be clarified or amplified with additional factual allegations in a legal brief or memorandum, assuming that the facts in question are consistent with the allegations contained in the pleading. See Pegram v. Herdrich, 530 U.S. 211, 230 and n.10 (2000) (nothing that the Court may use a party's brief to clarify allegations in the pleading whose meaning is unclear). The Court understands ART's additional factual assertions to have been made in the interest of factually amplifying its counterclaim for breach of contract.

In examining the facts in the light most favorable to ART as the non-moving party, ART has sufficiently alleged facts to support a claim for breach of contract. See Answer ¶¶ 4, 21-22. Therefore, Xstrata's Motion to dismiss is denied as to ART's breach of contract counterclaim.

### C.  Unjust Enrichment Counterclaim

Xstrata also moves to dismiss ART's counterclaim for unjust enrichment. "The theory of unjust enrichment lies as a quasi-contract claim." Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d

561, 572 (2005).  The New York Court of Appeals has held that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract" and that a claim in quasi-contract "only applies in the absence of an express agreement[.]"  Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-89 (1987); see Angiodynamics, Inc. v. Biolitec, Inc., 606 F. Supp. 2d 300, 305 (N.D.N.Y. 2009) (Kahn, J.).

Both ART and Xstrata agree that they entered into a valid, binding agreement on November 7, 2006.  Compl. ¶ 6 and Ex. A at 1; Answer ¶ 4.  Further, ART concedes that the subject matter at issue is expressly addressed within the terms and conditions of the contract.  Answer ¶ 8; see Compl. Ex. A. at 6.  Because the dispute is covered by the Agreement, a claim sounding in unjust enrichment cannot proceed.  Therefore, Xstrata's Motion to dismiss is granted as to the unjust enrichment counterclaim.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED,** that Plaintiff's Motion to dismiss Defendant's Counterclaims (Dkt. No. 6) is **GRANTED in part and DENIED in part**; Defendant's Counterclaim for unjust enrichment is **DISMISSED,** and the Motion is otherwise **DENIED**; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:   July 20, 2009
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge